# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

UNITED STATES DISTRICT COURT
FILED
JUN 27 2023
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

US

v.

KOPP

## CERTIFICATE OF SERVICE*

Docket Number: 1:00-cr-189 A

I, _J. KOPP_, hereby certify under penalty of perjury that
(print name)

on _SUN 2023_, I served a copy of _SUPPLEMENT TO PREVIOUSLY_
(date)
_FILED MO. FOR PERM. TO FILE SUCCESSIVE USC §2255 APPEAL_
(list all documents)

by (select all applicable)**

___ Personal Delivery        X United States Mail        ___ Federal Express or other
                                                             Overnight Courier

___ Commercial Carrier        ___ E-Mail (on consent)

on the following parties:

| Name | (1) 138 Delaware AVE US Attorney WDNY Buffalo, NY 14202 United States | Zip Code |
| --- | --- | --- |
| Name | | Zip Code |
| Name | (2) Usdc Wdny WDNY US Court House 2 Niagara Square Buffalo, NY 14202 United States | Zip Code |
| Name | | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_22 JUN 2023_
Today's Date

_James C. Kopp_
Signature

Certificate of Service Form (Last Revised 12/2015)

*CC: USDC*

TRULINCS 11761055 - KOPP, JAMES CHARLES - Unit: MEN-A-B

----------------------------------------------------------------------

FROM: 11761055
TO:
SUBJECT: DV ~~form 1 (fed.) 7 ++wait++~~
DATE: 06/21/2023 07:44:59 AM

1

United States Circuit Court of Appeals
In and for the Second Circuit
40 Foley Square
NY, NY  10007

```
_____
                    )
     US             )
                    )
     v.             )
                    )
     Kopp           )
                    )
                    )
_____)
```

SUPPLEMENT TO PREVIOUSLY FILED

MOTION FOR PERMISSION TO FILE A SUCCESSIVE

18 USC SECTION 2255 APPEAL

Previous motion filed 9 June, 2023, before this Court.  The Motion for Permission to File a Successive

Section 2255 is based on +++Dobbs v. Jackson+++(2022), a US Supreme Court ruling.

The previous grounds already filed are:

1) FACE is invalid in the current +++Dobbs+++ environment

2)  I should be able to put forward a justification defense, at retrial;

3)  FACE is an abuse of the US Commerce Clause, in the current +++Dobbs+++ environment.

This Supplement includes Grounds 4, 5, 6 and 7 in addition to the above-mentioned Grounds filed 9 June 2023.

The facts supporting those Grounds are as follows:

---

FROM: 11761055
,TO:
SUBJECT: DV 4 and 5
DATE: 06/21/2023 07:59:51 AM

### GROUND FOUR

The sentence under 18 USC Section 248 was in excess of the maximum, authorized by law.

Supporting facts:

Considering that a life sentenced is only mentioned in the context of a second or subsequent offence under

18 USC Section 248(b), to impose a life sentence for Kopp's fist offense contradicts the structure of the state

(+++Expressio unius est exclusio alterius+++.)

Ground Five (infra) says that the firearms enhancement of 18 USC Sections 924(c) and (j) does not apply

since the maximum penalty for a "first offense" is no more than a year a nd the firearms enhancement only

applies to a "felony" defined as +++more+++ than one year).

### GROUND FIVE

the sentence enhancement under 18 USC Sections 924 (c) and )j) was imposed in absence of a predicate

felony as required for a crime of violence under 18 USC Section 924(c)(3).

Supporting facts: Being Kopp's first offense under 18 USC Section 248, Section 248(b)(1) does not authorize

a sentence of more than one year as required for a felony under 18 USC Section 315(a)(3).

If the Court of Appeals does not grant a 2244 motion, then it may be possible to file a 2241 motion locally for

Grounds Four and Five instead. this is because (Ground Four) you are "actually innocent" of having committed

a +++second or successive+++ violation of the FACE Act (at most you only committed a first violation); and

(Ground d Five) you are "actually innocent" of having committed a felony violation of the FACE Act (because

the penalty for a first violation of the FACE Act is not more than one year, which is the legal requirement for a felony).

### GROUND SIX

Ground Two (supra) has opened the idea of error of the trial judge in forbidding a justification defense, and

how +++Dobbs+++ opens the door further. In this Ground I expand on the notion with the following: Part of the

harm that happened in court was that, in addition to the evidences I was prepared to being (testimony of a

former abolitionist, pictures of children's bodies, etc) was calling the Erie County Coroner as witness to

determine the humanity of the dead bodies of children which daily are brought to the basement of ECMC for

---

post mortem.

  Such an expert is perfect for the job.  Affirming that these bodies are indeed the bodies of humans, and members of the species +++Homo sapiens+++ helps conform my motivation to the established federal definition of unborn children as such ( 18 USC Section 1841).  If Vacation of sentence and retrial is granted by this court, this is part of how I an assist the new trier of facts to ascertain and apply federal law, and to bring evidence federal law deems relevant and not to be excluded.

  In addition to his testimony about the species and human of the children's bodies, the Coroner is also an excellent witness as to imminence.   Meaning, once a child is scheduled for decapitation by (proportionately equal) jet engine suction, the use of Thomistic force is appropriate.  (See:  [FN 1], Waters Letter, for elucidation of the principle of Double Effect, and its ramifications for Federal and NY State "Good Samaritan" Laws ). Thomistic force is appropriate at any time before the abortionist actually picks up the tools of death, and the young mom is finally dragged into the mill (as is often the case).

GROUND SEVEN

Counsel was barred from challenging the constitutionality of the FACE Act with testimony from the

federal medical examiner (coroner) as to whether performance of an abortion results in the legal harm or

evil of child "homicide and as to whether child homicide is a "health service".

It is true I was pro se for the trial, but before that I was represented by counsel who's challenge to FACE

was barred along with my own in limine proposals of Section 1841 unborn child evidence of humanity.

Further: there was no +++Dobbs+++ during trial (2006). Thus, this claim, now. Please see also Ground One

for current status of +++Dobbs'+++ impact on this habe.

Supporting facts: Whether the law considers it justified or even legal, homicide of innocent children is always

a legal harm or evil. At issue is 18 USC Section 248(a)(1), directed to the protection of persons obtaining or

performing reproductive :health service". In attacking the constitutionality of the FACE Act, testimony from

the federal medical examiner (coroner) was necessary to competently determine whether performance of

an abortion results in the legal harm or evil of child "homicide" and whether child homicide is a "health service."

Because I nor counsel raised this earlier within the one-year limit, the gateway to habeus corpus is closed

on this claim, unless something new comes along that enables you to pass through the gateway. That

something is +++Dobbs++++. +++Dobbs+++ enables me to claim actual innocence.

Showing of actual innocence, meaning legal and factual innocence opens the gateway to enable a habeus

corpus petitioner to pass through despite a procedural impediment.

Under +++Roe v. Wade+++ 410 US 113 (1973), abortion was considered a constitutionally protected

right. Since interference with a constitutional right militates against the standard of actual innocence,

+++Roe+++ precluded a claim of actual innocence concerning interference with abortions.

But under +++Dobbs+++, abortion is not a constitutional right, and never was. Hence, it is evidence in light

of +++Dobbs that I did not interfere with a constitutional right by interfering with abortion. As a

consequence. the suggestion of actual innocence has merit based on +++Dobbs+++, and my proffered

claim now passes through the gateway.  See also +++Schlup v. Delo+++ 513 US 298 (1995).

    The main focus of this  Ground Six is: the coroner was improperly barred from testifying as to the

humanity of the bodies of the children which are now and were routinely sent to the basement of ECMC for

the pathologist there to carefully identify, and also, account for all limbs, eyeballs, organs etc., to prevent

them from growing to term and being delivered at term gestation in the event they were missed by the

abortionist.  This is the heart of abortion pathology, and a natural courtroom match for 18 USC Section 1841

expert testimony by the coroner to assist the trial of fact at trial.

PRAYER

. For the above-stated reasons, Movant humbly asks this Court to:

A.  Declare FACE null and void, and vacate my sentence;

B.  Failing that, to vacate my sentence and grant a retrial to include a justification defense and Coroner

        testimony;

C.  Any other relief the Court deems appropriate.  *16/02*  *RELIEF FROM §§ 2241, 2513, OR TO DRAFT NEW CLAIMS AS APPROPRIATE =)*

Respectfully Submitted,

James C. Kopp        11761-055

Box 9            FCI

Mendota, CA        93640

Executed at

Mendota

___22___ June 2023

*att: COS, MIS, FORM B, IFP APP (9 Jun 23) filing*

*att: COS, (instant filing)*

IN ADDITION TO VIGANO (IN THE REMNANT (MN))

ABP.

... I WAS ALSO THINKING
OF:

FAST LANE TO HEAVEN

NED DOUGHERTY

A GREAT (OUT-STATE) N.Y. STORY ...

&

(FOR THAT MATTER ...)

WIND-UP BIRD CHRONICLE

HARUKI MURAKAMI

Chief Judge Richard Arcara

Your Honor,

With reference to the case of James Kopp, I have enclosed an analysis according to the science of ethics for your information.

I understand that the court made a valiant attempt to dispense justice during the proceedings. I shall not attempt to comment on whether it was prudent or not for Mr. Kopp to enter into the kind of action for which he has been already judged.

Although the court has decided that he was objectively gravely erroneous, his perspective is

such that Mr. Kopp may have judged this act to be licit and appropriate under these particular circumstances. Nevertheless, all that one can hope for now is that he be accorded clemency. May I take the liberty, Your Honor, of strongly requesting that you allow the strains of mercy and clemency to guide your most prudent judgment in according Mr. Kopp the sentence you consider to be fitting.

I have the honor to be your humble servant,
Raphael T. Waters, Ph.D., L.Ph., Ph.C.
Professor of Philosophy
President, Scholars for Social Justice
Registrar, Catholic Academy of Sciences in the USA. Director, Aquinas School of Philosophy.

## THE CASE OF JAMES KOPP.

A great deal of publicity has been given by the media to the case of James Kopp. Much injustice has been involved, for the assumption of his guilt is widespread. It is not the intention of this analysis to claim that he is guilty or not guilty, but is an effort to bring out aspects, which seem to have been neglected. In order to clarify the moral principles involved, let us consider the following cases:

FIRST CASE: Joseph is brutally attacked by a man who quite evidently has the intention of doing him great bodily harm, possibly even up to the point of his death. There is no time to call the police, who are responsible for the defense of the community, so Joseph defends himself and has to use such force, while rejecting the attack of the other, that the assailant dies. This is in accordance with the principle of double effect and its four conditions, for the death of the attacker is indirect and not intended.

The principle of double effect is enunciated as follows:

If an act is followed by two effects, one good and the other evil, it is morally permissible to do the act provided the following four conditions are met: II-II, 64, 7.

a) The act itself is morally good or at least indifferent.

The act is properly and formally the removal of the attack by rejection of the attacker. Removal of

the attack is a good act. The removal may be considered the killing of the attacker if it is considered physically (materially).

b) The two effects, one good and the other evil, follow with equal immediacy: Joseph's safety (his life is preserved) and the other's death occurs at the same time.

c) The good effect alone is intended--the safety of Joseph's life, not the assailant's death, which is merely tolerated.

d) There is due proportion between the good and evil effects; Joseph's safety (goods equivalent to life) and the death of the other have equal value.

This is morally permissible, for, at that moment, since authority for self-governance is a property of human nature, which is usually delegated to the civil authority, Joseph rightly exercises that property of his human nature, which is social self-governance, in the absence of those who have care of the community. He chooses the means for effecting the good end, but in causando, the evil effect also results. The act is chosen for the good effect while tolerating the evil effect. No doubt, the court also will acknowledge the right to defend oneself, completely exonerating Joseph. Of course, there should be no more action by Joseph than is necessary.

In popular superficial thinking, the above action would be described as the killing of a man. This is a physical description whereas a moral description upholds the defender's action as the rejection of an attack (or preservation of the victim's safety) which is appropriate whether the attacker is a man, a dog, a shark, or a lion.

SECOND CASE: Robert sees a young girl being attacked by a man, and fearing for the child's life, he calls the police, who treat the matter indifferently. Robert insists that the child is in great need of help but the police and others all totally ignore his plea for help. Then Robert decides to defend the girl even up to the point of causing the death of the man. No doubt the defender would receive a commendation by authorities for risking his own life in order to save another. Indeed, if he had ignored the plight of the girl, everyone would have judged him adversely.

Morally, he is innocent even though the attacker lost his life. It would be ludicrous to argue that the attacker was the father of a family or that the defense took place in front of his family, notwithstanding that regretful but unavoidable circumstance.

THIRD CASE: Consider the assassination of a tyrant in which case there is no authority other than the tyrant to prevent the tyranny imposed on society. The action has as its good end, the direct removal of the tyrant for the safety or integrity of the common good, and indirectly, the death of the tyrant. With certain conditions being observed this action is morally permissible if it also meets the requirements of the principle of double effect even though it is evident that there would be legislative prohibition against such assassination.

a) The act of removing an attack or attacker could be described as, at least, an indifferent act or a laudable action.
b) The two effects proceed with equal immediacy from the act, the safety of innocents from his attack, and the loss of the life of the assassin.
c) The good effect alone was intended.
d) There is due proportion between the good and evil effects, the safety of innocents from his attack

and the loss of the life of the assassin.

**FOURTH CASE:** In the case of the assassination of Dr. Slepian, the following should be noted:

The assassin would have had full knowledge that attacks are being made on the life of innocent babies notwithstanding this that the authorities are fully aware of the attacks and indeed condone them by establishing laws permitting abortion, which laws are invalid laws since they are in utter conflict with the natural moral law. Moreover, he would have realized the enormity of the injustice since the direct killing of innocent babies is taking place in great numbers. Furthermore, having pleaded with civil authorities to stop the slaughter—or at least, knowing that others have done so—Mr. Kopp sets out to stop the attacker. If he meets the four conditions of the principle of double effect (e.g. revenge is not intended), he is acting according to the principle and that he is, in fact, removing a danger to the infants in their mothers' wombs. His action is formally but only materially can it be described as the killing of the attacker who functions as the killer of innocent babies.

Analysis of the Principle of Double Effect: If the attacker's intention (motive) was good (not intending death as death but as removal for the sake of the innocents), it seems that the four conditions apply, as follows:
a) The act of removing an attack or attacker could be described as, at least, an indifferent act or a laudable action.
b) The two effects proceed with equal immediacy from the act, the safety of innocents from his attack, and the loss of the life of the assassin.
c) The good effect alone was intended.
d) There is due proportion between the good and evil effects, the safety of innocents from his attack and the loss of the life of the assassin.

Objection: Should this action of assassination be condemned as an act of murder?
Reply: It should be stated that murder is defined as the unauthorized and direct killing of an innocent human person. Cf. note that Abraham, when he intended to sacrifice Isaac, was acting with the authority of God.

It must also be said that authority is vested in human nature (as a property of man's rationality) and delegated by the people to those appointed to take care of the community (the government). Then at the moment of his action, the assassin, exercising his authority for self-preservation as well as social preservation, represents the government while defending the innocent person. Hence, the act of defense is authorized by reason of human nature and the circumstances of the act of defense, that is, the deliberate neglect or opposition of the governing authority, or its instrument, the police.

Objection: Perhaps it can be claimed that excessive force was used.

Reply: The question should be raised concerning other available means; other means have all been rejected by courts and other defenders of abortion; this constant rejection would be known to Kopp.

Objection: Dr. Slepian was killed in his own home and in front of his family.

Reply: The fact that the victim was killed in his own home and *in front of his family* is a rhetorical argument and accidental to the moral consideration of the action.

Objection: If it is claimed that the assailant intended the death of the other, the following should be said in reply.

Reply: The teaching of a famous moralist, De Lugo, states that the state can intend the death of the other. Moreover, St Thomas Aquinas states that it is laudable for the state to execute certain types of criminals (II-II, q.64, a. 2). Now at the time of the assassination of Dr. Slepian, if the assailant decided to remove the attacks on the innocents, then at that time, he represents the state as said above.

Objection: However, it has been objected that his use of stealth vitiates his act.

Reply: No one should judge this case because the assailant used stealth. The generals who attempted to assassinate Hitler during World War II also used stealth yet no one judged their attempts as evil, but regretted their failure.

If an intruder was in my home and I was alone to defend myself, stealth might be one of the few advantages in my defense. Even if the assailant had not used stealth, no doubt his action would

still be judged as culpable in the eyes of the media and public opinion.

Objection: Some have argued that Kopp has given credence to his guilt by reason of his flight to Europe.

Reply: On the other hand, he must have known that he would be judged in a biased fashion based upon the news releases immediately after the assassination and the injustices established by the state with the invalid laws established by the state. We cannot judge motives or know his reasons for flight until there is some evidence.

CONCLUSION:

It seems that the assailant is removing a deadly threat to innocent lives while death is an indirect effect of removing that danger, if his motives are good.

However, in the public mind, the action of Mr. Kopp was a violent act and therefore, immoral. This failure to distinguish an act of force from an act of violence springs from the lack of education in ethical matters. A police officer or soldier may employ acts of force to prevent an evil doer from his activities just as a man ought to use force to remove a loaded pistol from the hands of a child who is wielding it irresponsibly. On the other hand, to employ an act of violence would involve injustice as can be found in someone removing candy from a child who was given this by his parents. It would be otherwise if the child was diabetic. Failure to make suitable distinctions, such as between force and violence, has allowed public reporting even to declare some act, an accident, to be an act of murder because someone died in the accident. It is obvious that Mr. Kopp's action was forceful rather than an act of violence.

Furthermore, one might claim that Kopp used excessive force which is contrary to the fourth condition of the principle of double effect, namely, that the evil effect and the good effect ought to have due proportion to each other. Then it becomes a question of Kopp's motives. Again in keeping with this objection, it has been stated that Kopp used a rifle suitable only as an attack weapon rendering his claim doubtful. One would have to know if any other rifle was available for his use and, moreover, whether he had sufficient understanding of firearms to realize the power of such a weapon. [*To carry out his plan to wound*

*only, Jim had to place a bullet at least through glass and perhaps through wood, and be very precise. To do this he needed a high-powered rifle, not something like a 22. ed.]* If Mr. Kopp pleads that he intended only to wound Dr. Slepian rather than kill him, as the sole means available to impede the physician's activities, which are manifestly contrary to the natural moral law, then admittedly it all comes down to his motives which are impossible to judge.

} ITALICS =
{ EDITORIAL NOTE,
) NOT BY DR.
WATERS

There appears to be no sound argument which demonstrates the immorality of the act and culpability of the assailant— whether Kopp or another. But in view of the above analysis, it must be said that, since there are doubts about the guilt of Kopp, namely that he intended a violent act, an act contrary to the virtue of justice, then he should be given the benefit of the doubt. This is a tenet of the natural moral law as well as the civil law which is subordinate to the natural moral law. Hence, leniency at least should be apportioned to Mr. Kopp.

Since the medley of voices, especially the media, have clamored for judging Mr. Kopp to be guilty, based on acceptance of abortion, a heinous social crime contrary to the common good and threatening the lives of the unborn citizens in the name of a spurious freedom. Public opinion is at a very low level as some citizens opt for every activity destructive of the common good and undermining the very fabric of civil society.

The court has found Mr. Kopp guilty while others might see him as a hero inasmuch as he has stopped one physician performing abortions while this seems to have even caused a drop in the numbers of physicians willing to perform abortions.

However, Kopp is being judged now by those opting for abortion and who have permeated the political scene with their teachings aiming at the destruction of the unborn innocents, which is vitiated by the clamor of those seeking their own political and financial advantage.

It is reasonable to request that the court in the very least ought to show leniency in apportioning penalty to a citizen who, manifesting great enthusiasm for the preservation of delicate lives at risk from the widespread destruction of American children in their mothers' wombs need only be accused of over-enthusiasm and perhaps keen activity with poor judgment at the very most.

The above has been written to elucidate the case in view of principles of the natural moral law to which civil law is sub alternated. Civil law, which is positive law, is merely the particularization of the natural moral law, the principles of which are discovered by an adequate understanding of human nature. Therefore, any law which conflicts with the natural moral law is invalid law. This is clearly taught in the science of ethics and applies to civil laws permitting abortion.

Affidavit of

Jim Kopp

IN RE:   Waters Letter Provenance


1.   In 2007 Dr. Raphael Waters was Associate Professor in Philosophy at Genesee College, Western New York, and

President of the US Thomas Aquinas Society;

2.   In Spring 2007 Waters sent the letter titled "The Case of James C. Kopp" to Judge Richard C. Arcara, USDC - WDNY

in advance of the sentencing of Kopp;

3.   Waters also sent a copy of the letter to Thomas A. O'Conner, MD, Eggertsville, NY (Mercy Hospital);

4.   O'Conner sent a copy of the letter to Kopp;

5.   In June 2007 a paralegal employed by Bruce Barket, Esq., Garden City, NY, met Waters and discussed the content

of the letter;

6.   Dr. Waters died in 2009.  His survivors include colleagues who will attest to his competence in Philosophy.


I affirm under penalty of perjury that the foregoing is true and correct.

Executed
at Mendota
5 June 2022

James C. Kopp  11761-055

J KOPP 11761-055
BOX 9        FCI
MENDOTA CA    93640

00-CR-189

H² R. ARCARA
ATTORNEY AT LAW

LEGAL
MAIL

⟷11761-055⟷
Usdc Wdny
WDNY US Court House
2 Niagara Square
Buffalo, NY 14202
United States

USDC

142ø2

Forever USA
Forever USA
Forever USA
Forever USA

BUFFALO NY 142

USDC - WDNY
JUN 27 2023
BUFFALO